# EXHIBIT B

Case No. 1:17-cv-00159-CMA-KMT   Document 5   filed 01/18/17   USDC Colorado   pg 1 of 14

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock St., Denver, CO 80202 | DATE FILED: September 12, 2016 7:21 PM<br>FILING ID: 244E66635EA8A<br>CASE NUMBER: 2016CV33340 |
| **Plaintiff:**<br>**KELLEY HARRIS**<br><br>vs.<br><br>**Defendants:**<br>**FLEETWOOD MAC TOURING 2014, LLC; FUTURE BEAT, LLC; AND KROENKE ARENA COMPANY A/K/A KROENKE SPORTS & ENTERTAINMENT, LLC D/B/A PEPSI CENTER** | ▲COURT USE ONLY▲ |
| **ATTORNEYS:**<br>Name:    Stephen J. Burg, Reg. No. 39789<br>            Jessica B. Prochaska, Reg. No 46319<br>Attorneys:   Plaintiff<br>Address:    Burg Simpson Eldredge Hersh & Jardine, P.C.<br>            40 Inverness Drive East<br>            Englewood, Colorado, 80112<br>Telephone:  (303) 792-5595<br>Facsimile:  (303) 708-0527<br>E-Mail:     sburg@burgsimpson.com<br>            jprochaska@burgsimpson.com | Case No.:<br><br>Ctrm/Div: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW,** Plaintiff, Kelley Harris, by and through her attorneys, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., hereby submits her Complaint and Jury Demand against Defendant Future Beat, LLC, Defendant Fleetwood Mac Touring 2014, LLC, and Defendant Kroenke Arena Company, LLC a/k/a Kroenke Sports & Entertainment, LLC d/b/a Pepsi Center and states, alleges, and avers as follows:

## PARTIES

1. Plaintiff, Kelley Harris, is a resident of Arapahoe County, Colorado, residing at 6161 S. Joplin Way, Aurora, Colorado 80016.

2. Defendant, Future Beat, LLC, is a Foreign Limited Liability Company located at 280 South Beverly Dr. Penthouse, Beverly Hills, CA 90212. The office of its registered agent, Andrew Tenenbaum, is 280 South Beverly Dr. Penthouse, Beverly Hills, CA 90212.

1

3. Upon information and belief, Defendant Future Beat organized the meet and greet Mick Fleetwood VIP Experience at the Pepsi Center on December 12, 2014, prior to the Fleetwood Mac concert and organized the VIP package for the Fleetwood Mac concert including the seating area where the incident occurred.

4. Defendant, Fleetwood Mac Touring 2014, LLC (hereinafter "Defendant Fleetwood Mac", is a Foreign Limited Liability Company located at 21731 Ventura Blvd, Ste. 300, Woodland Hills, CA 91364. The office of its registered agent, Lester J. Knispel, is 21731 Ventura Blvd, Ste. 300, Woodland Hills, CA 91364.

5. Upon information and belief, Defendant Fleetwood Mac, managed its tours and concerts including but not limited to the cords and/or wiring cables related to audio visual equipment that crossed pedestrian walkways and/or aisles.

6. Defendant, Kroenke Arena Company, LLC a/k/a Kroenke Sports & Entertainment, LLC d/b/a Pepsi Center (hereinafter "Defendant Pepsi Center"), is a Limited Liability Company located at 1000 Chopper Circle, Denver, CO 80204. The office of its registered agent, Stephen L. Stieneker, is 1000 Chopper Circle, Denver, CO 80204.

7. Upon information and belief, Defendant Pepsi Center is the owner and/or manager of the Pepsi Center located at 1000 Chopper Circle, Denver, CO 80204 and oversees all events held at the Pepsi Center.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9.

9. The Court has personal jurisdiction over the Defendants by virtue of the Defendants' operations and presence in Colorado, by their transacting business in or directed at Colorado, by the Defendants commission of a tortious act that caused injury and damages in Colorado, and/or by otherwise purposefully availing themselves of the benefits and privileges of Colorado law by regular, continuous, and systematic contacts with Colorado.

10. Venue is proper in this Court, pursuant to C.R.C.P. 98(c) because the tortious conduct giving rise to this complaint occurred in Denver County and Defendant Pepsi Center is located in Denver County.

## GENERAL ALLEGATIONS

11. On March 31, 2014, Mr. and Mrs. Harris purchased 2 VIP Package tickets for the Fleetwood Mac Concert on December 12, 2014 to be held at the Pepsi Center.

12. On December 10, 2014, Defendant Future Beat emailed Mr. and Mrs. Harris regarding their VIP Package Purchase.

13. On December 12, 2014, Mr. and Mrs. Harris arrived at the Pepsi Center to attend the pre-concert VIP Mick Fleetwood Meet & Greet (the "Meet & Greet").

14. At the time of the incident on December 12, 2014, Mrs. Harris had a disability.

15. Upon arrival, Mrs. Harris requested wheelchair assistance for her disability, which was provided.

16. Mr. and Mrs. Harris entered the Meet & Greet through the lower floor doors nearest the stage, between or around Sections 142 and 144.

17. At the end of the Meet & Greet, Mr. and Mrs. Harris were asked to depart the floor area.

18. Given Mrs. Harris' disability, Mr. and Mrs. Harris requested to remain in the floor area in Section CCC row 2, as it was very close to their seats Section BBB row 2.

19. An event representative denied Mr. and Mrs. Harris' request to remain in the floor area without a reason and Mr. and Mrs. Harris were forced to depart the floor area.

20. Mr. and Mrs. Harris were sent to the area of the venue where event merchandise was being sold.

21. After it appeared the public was being permitted to the floor area, Mr. and Mrs. Harris returned to the same doors between or around Sections 142 and 144 for re-entry to the floor area.

22. An event representative denied Mr. and Mrs. Harris access or re-entry through the doors between Sections 142 and 144.

23. A second event representative appeared and communicated to Mr. and Mrs. Harris that he could only take them through a nonpublic hall that ran parallel to the floor area and would take them the full distance to their seats.

24. Mrs. Harris was not permitted to use the wheelchair and was told she needed to walk to her seats.

25. The second event representative only took Mr. and Mrs. Harris as far as the door to the rear of the floor area and slightly in the floor area.

26. Mr. and Mrs. Harris requested assistance the full distance in route to their seats.

3

27. The second event representative walked Mr. and Mrs. Harris to a third event representative and appeared to communicate something to the third event representative.

28. The third event representative only took Mr. and Mrs. Harris to the beginning of the aisle along the floor seating and stated she could no longer assist Mr. and Mrs. Harris.

29. Due to the number of persons involved and the repeated requests for assistance, the floor area had recently become dark.

30. Partway down the aisle, Mrs. Harris tripped over a cords cover/ramp and fell down landing on it.

31. Mrs. Harris was unable to see the cords cover/ramp when she approached and had no notice that it existed.

32. Upon information and belief, the cords cover/ramp ran across the full width of the aisle and was approximately 6 or more inches in height.

33. The cords cover/ramp was devoid of any visual indicators at the base of the cover/ramp and there was no additional lighting on or in the aisle approaching the cover/ramp.

34. The inability of paying concert attendees to see the improperly, inadequately, or not marked at all cords cover/ramp and Mrs. Harris' injuries from falling over the improperly, inadequately, or not marked at all were reasonably foreseeable to the Defendants.

35. The inadequately lit aisle with a cords cover/ramp that ran across it was a dangerous condition on the property.

36. The Defendants' and their employees' failure to properly mark, provide adequate lighting, or warn paying concert attendees of the dangerous cords cover/ramp was careless, reckless, and negligent.

37. As a direct and proximate result of the Defendants' careless, reckless, and negligent actions and inactions, Mrs. Harris suffered serious bodily injury including, but not limited to, a torn ACL, dislocated right knee, fractured bone, neck pain, and lower back pain.

38. As a direct and proximate result of the Defendants' careless, reckless, and negligent actions and inactions, Mrs. Harris has suffered economic losses and damages including, but not limited to, past and future medical expenses, and out-of-pocket expenses.

39. As a direct and proximate result of the Defendants' careless, reckless, and negligent actions and inactions, Mrs. Harris has suffered past and future non-economic damages

4

including, but not limited to, pain and suffering, inconvenience, emotional distress, and impairment of quality of life including:
1. Physical pain and suffering.
2. Inconvenience having to attend numerous doctors' appointments and the inconvenience of physical limitations from the pain.
3. Emotional Distress as a result of ongoing pain lasting years and the emotional distress related to the ongoing medical expenses.
4. Emotional Distress from her inability to function in the same or similar manners as she did before the incident.
5. Impairment of her quality of life because of the physical pain and physical limitation that restricts her daily activities.

40. As a direct and proximate result of the Defendants' careless, reckless, and negligent actions and inactions, Mrs. Harris has suffered permanent impairment and disfigurement.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
### **(PREMISES LIABILITY – DEFENDANT FUTURE BEAT)**

41. Plaintiff incorporates by reference the preceding paragraphs of the Complaint.

42. With regard to the property on which Mrs. Harris was injured, Defendant Future Beat was a "landowner," as defined by C.R.S. § 13-21-115(1), as it was in possession of real property, legally responsible for the condition of real property, and/or legally responsible for the activities conducted or circumstances existing on the real property.

43. At the time of Mrs. Harris' injury on December 12, 2014, Mrs. Harris was an "invitee" of Defendant Future Beat, as defined by C.R.S. § 13-21-115(5)(a).

44. Defendant Future Beat owed a statutory duty to Mrs. Harris to exercise reasonable care to protect Mrs. Harris from dangers on the property of which it knew or should have known, which dangers are more fully described herein.

45. Upon information and belief, Defendant Future Beat arranged, organized, and was responsible for the Meet & Greet and knew or should have known that about the cords and/or wiring cables related to audio visual equipment would be configured in the Pepsi Center including, but not limited to, across pedestrian walkways and/or aisles.

46. Upon information and belief, on December 12, 2014, there were cords and/or wiring cables related to audio visual equipment laying across pedestrian walkways and/or aisles that had a cords cover/ramp which was improperly, inadequately, or not marked at all.

5

47. Upon information and belief, on December 12, 2014, paying concert attendees of the Fleetwood Mac concert and the Meet & Greet, including Mr. and Mrs. Harris, were forced to travel over the improperly, inadequately, or not marked at all cords cover/ramp in order to reach their seats.

48. Upon information and belief, Defendant Future Beat knew or should have known to have safety measures in place to protect and alert paying concert attendees of these cords covers/ramps as lighting could be poor at times.

49. At the time Mrs. Harris was injured, Defendant Future Beat breached its duty to exercise reasonable care to protect Mrs. Harris from dangers of which it knew or should have known as described in Paragraphs 45-48.

50. As a direct and proximate cause of Defendant Future Beat's actions and inactions as described in Paragraphs 45-48, Mrs. Harris has suffered past and future economic and non-economic damages including, but not limited to, medical expenses, out-of-pocket expenses, pain and suffering, inconvenience, emotional distress, mental anguish, loss of enjoyment of life, permanent impairment and disfigurement as further described in paragraphs 37-40 herein, the amounts of which will be proven at trial.

## SECOND CLAIM FOR RELIEF
## (NEGLIGENCE – DEFENDANT FUTURE BEAT)

51. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

52. The Defendant Future Beat, as the entity who arranged, organized, and was responsible for the Meet & Greet, owed a duty to the paying concert attendees who paid extra for the Meet & Greet, including Mrs. Harris, to ensure that the walkways and/or aisles were safe for paying concert attendees to access their seats, including making sure that all cords covers/ramps in the aisle were clearly marked with fresh and visible hazard tape, illuminated by additional lighting, and that event representatives warned paying concert attendees of the hazardous condition in the walkway/aisle and ensuring that attendees of the Meet & Greet would safely be able to reach their seats.

53. The Defendant Future Beat breached its duty by failing to ensure that the cords cover/ramp was properly and adequately marked with warning tape or paint, by failing to ensure that the cords cover/ramp and walkway/aisle was properly and adequately illuminated, by failing to ensure that event representatives warned paying concert attendees, including Mrs. Harris, that there was a hazardous cords cover/ramp in the walkway/aisle, and by failing to ensure that attendees of the Meet & Greet would safely be able to reach their seats.

54. As a direct and proximate result of Defendant Future Beat's unreasonable failure to warn or otherwise alert Mrs. Harris of the hazardous cords cover/ramp in the walkway/aisle

6

that Defendant Future Beat knew or should have known was a hazardous condition and Defendant Future Beat's unreasonable failure to ensure that attendees of the Meet & Greet would safely be able to reach their seats, Mrs. Harris was injured.

55. The inability of paying concert attendees to see the improperly, inadequately, or not marked at all cords cover/ramp and Mrs. Harris' injuries from falling over the improperly, inadequately, or not marked at all were reasonably foreseeable to the Defendant Future Beat.

56. As a direct and proximate result of Defendant Future Beat's negligent actions and inactions, Mrs. Harris has suffered past and future economic and non-economic damages including, but not limited to, medical expenses, out-of-pocket expenses, pain and suffering, inconvenience, emotional distress, mental anguish, loss of enjoyment of life, permanent impairment and disfigurement as further described in paragraphs 37-40 herein, the amounts of which will be proven at trial.

## THIRD CLAIM FOR RELIEF
### (PREMISES LIABILITY – DEFENDANT FLEETWOOD MAC)

57. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

58. With regard to the property on which Mrs. Harris was injured, Defendant Fleetwood Mac was a "landowner," as defined by C.R.S. § 13-21-115(1), as it was in possession of real property, legally responsible for the condition of real property, and/or legally responsible for the activities conducted or circumstances existing on the real property.

59. At the time of Mrs. Harris' injury on December 12, 2014, Mrs. Harris was an "invitee" of Defendant Fleetwood Mac, as defined by C.R.S. § 13-21-115(5)(a).

60. Defendant Fleetwood Mac owed a statutory duty to Mrs. Harris to exercise reasonable care to protect Mrs. Harris from dangers on the property of which it knew or should have known, which dangers are more fully described herein.

61. Upon information and belief, Defendant Fleetwood Mac performed approximately 40 concerts in North America in 2014 as part of its tour, Defendant Pepsi Fleetwood Mac knew or should have known that the cords and/or wiring cables related to its audio visual equipment would be configured in the Pepsi Center including, but not limited to, across pedestrian walkways and/or aisles.

62. Upon information and belief, on December 12, 2014, there were cords and/or wiring cables related to Defendant Fleetwood Mac's audio visual equipment laying across pedestrian walkways and/or aisles that had a cords cover/ramp which was improperly, inadequately, or not marked at all.

7

63. Upon information and belief, on December 12, 2014, paying concert attendees of the Fleetwood Mac concert, including Mr. and Mrs. Harris, were forced to travel over the improperly, inadequately, or not marked at all cords cover/ramp.

64. Upon information and belief, Defendant Fleetwood Mac knew or should have known to have safety measures in place to protect and alert paying concert attendees of these cords covers/ramps as lighting could be poor at times.

65. At the time Mrs. Harris was injured, Defendant Fleetwood Mac breached its duty to exercise reasonable care to protect Mrs. Harris from dangers of which it knew or should have known as described in Paragraphs 61-64.

66. As a direct and proximate cause of Defendant Fleetwood Mac's actions and inactions as described in Paragraphs 61-64, Mrs. Harris has suffered past and future economic and non-economic damages including, but not limited to, medical expenses, out-of-pocket expenses, pain and suffering, inconvenience, emotional distress, mental anguish, loss of enjoyment of life, permanent impairment and disfigurement as further described in paragraphs 37-40 herein, the amounts of which will be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (NEGLIGENCE – DEFENDANT FLEETWOOD MAC)

67. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

68. The Defendant Fleetwood Mac owed a duty to the public, including Mrs. Harris, to ensure that the walkways and/or aisles were safe for paying concert attendees to access their seats, including making sure that all cords covers/ramps covering the band's audio visual equipment cable wiring in the aisle were clearly marked with fresh and visible hazard tape, illuminated by additional lighting, and that event representatives warned paying concert attendees of the hazardous condition in the walkway/aisle.

69. The Defendant Fleetwood Mac breached its duty by failing to ensure that the cords cover/ramp was properly and adequately marked with warning tape or paint, by failing to ensure that the cords cover/ramp and walkway/aisle was properly and adequately illuminated, and by failing to ensure that event representatives warned paying concert attendees, including Mrs. Harris, that there was a hazardous cords cover/ramp in the walkway/aisle.

70. As a direct and proximate result of Defendant Fleetwood Mac's unreasonable failure to warn or otherwise alert Mrs. Harris of the hazardous cords cover/ramp covering the band's audio visual equipment cable wiring in the walkway/aisle that Defendant Fleetwood Mac knew or should have known was a hazardous condition, Mrs. Harris was injured.

8

71. The inability of paying concert attendees to see the improperly, inadequately, or not marked at all cords cover/ramp and Mrs. Harris' injuries from falling over the improperly, inadequately, or not marked at all were reasonably foreseeable to the Defendant Fleetwood Mac.

72. As a direct and proximate result of Defendant Fleetwood Mac's negligent actions and inactions, Mrs. Harris has suffered past and future economic and non-economic damages including, but not limited to, medical expenses, out-of-pocket expenses, pain and suffering, inconvenience, emotional distress, mental anguish, loss of enjoyment of life, permanent impairment and disfigurement as further described in paragraphs 37-40 herein, the amounts of which will be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (PREMISES LIABILITY – DEFENDANT PEPSI CENTER)

73. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

74. With regard to the property on which Mrs. Harris was injured, Defendant Pepsi Center was a "landowner," as defined by C.R.S. § 13-21-115(1), as it was in possession of real property, legally responsible for the condition of real property, and/or legally responsible for the activities conducted or circumstances existing on the real property.

75. At the time of Mrs. Harris' injury on December 12, 2014, Mrs. Harris was an "invitee" of Defendant Pepsi Center, as defined by C.R.S. § 13-21-115(5)(a).

76. Defendant Pepsi Center owed a statutory duty to Mrs. Harris to exercise reasonable care to protect Mrs. Harris from dangers on the property of which it knew or should have known, which dangers are more fully described herein.

77. Upon information and belief, Defendant Pepsi Center hosted approximately 25–30 concerts in 2014, Defendant Pepsi Center knew or should have known that the cords and/or wiring cables related to audio visual equipment would be configured in the Pepsi Center including, but not limited to, across pedestrian walkways and/or aisles.

78. Upon information and belief, on December 12, 2014, there were cords and/or wiring cables related to audio visual equipment laying across pedestrian walkways and/or aisles that had a cords cover/ramp which was improperly, inadequately, or not marked at all.

79. Upon information and belief, on December 12, 2014, paying concert attendees of the Fleetwood Mac concert, including Mr. and Mrs. Harris, were forced to travel over the improperly, inadequately, or not marked at all cords cover/ramp.

9

80. Upon information and belief, Defendant Pepsi Center knew or should have known to have safety measures in place to protect and alert paying concert attendees of these cords cover/ramp as lighting could be poor at times.

81. At the time Mrs. Harris was injured, Defendant Pepsi Center breached its duty to exercise reasonable care to protect Mrs. Harris from dangers of which it knew or should have known as described in Paragraphs 77-80.

82. As a direct and proximate cause of Defendant Pepsi Center's actions and inactions as described in Paragraphs 77-80, Mrs. Harris has suffered past and future economic and non-economic damages including, but not limited to, medical expenses, out-of-pocket expenses, pain and suffering, inconvenience, emotional distress, mental anguish, loss of enjoyment of life, permanent impairment and disfigurement as further described in paragraphs 37-40 herein, the amounts of which will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against the Defendants for relief as follows:

1. Economic damages, including but not limited to, past and future medical expenses, and out of pocket expenses;

2. Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, mental anguish, and emotional distress;

3. Damages for permanent and physical impairment and disfigurement;

4. All other compensatory damages caused by Defendants' actions, to be proven at trial;

5. Pre-judgment and post-judgment interest as provided for by law;

6. Attorney fees, costs and expenses of this action as provided for by law; and

7. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 12th day of September, 2016.

                                                    **BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*(Original signature on file at Burg Simpson Eldredge Hersh & Jardine, P.C.)*

 /s/ Jessica B. Prochaska
Stephen J. Burg, Reg. No. 39789
Jessica B. Prochaska, Reg. No. 46319
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595
*Attorneys for Plaintiff*

Plaintiffs' Address:
6161 S. Joplin Way
Aurora, Colorado 80016

11

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock St., Denver, CO 80202<br>**Plaintiff:**<br>**KELLEY HARRIS**<br><br>vs.<br><br>**Defendants:**<br>**FLEETWOOD MAC TOURING 2014, LLC; FUTURE BEAT, LLC; AND KROENKE ARENA COMPANY A/K/A KROENKE SPORTS & ENTERTAINMENT, LLC D/B/A PEPSI CENTER** | DATE FILED: September 12, 2016 7:21 PM<br>FILING ID: 244E66635EA8A<br>CASE NUMBER: 2016CV33340<br><br><br><br>▲COURT USE ONLY▲ |
| **ATTORNEYS:**<br>Name:          Stephen J. Burg, Reg. No. 39789<br>                    Jessica B. Prochaska, Reg. No 46319<br>Attorneys:    Plaintiff<br>Address:      Burg Simpson Eldredge Hersh & Jardine, P.C.<br>                    40 Inverness Drive East<br>                    Englewood, Colorado, 80112<br>Telephone:   (303) 792-5595<br>Facsimile:    (303) 708-0527<br>E-Mail:         sburg@burgsimpson.com<br>                    jprochaska@burgsimpson.com | Case No.:<br><br>Ctrm/Div: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

    ☐ This case is governed by C.R.C.P. 16.1 because:

    - The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

    - A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

    ☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

☐ The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☒ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☐ Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date. See C.R.C.P. 16.1(e). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date. See C.R.C.P. 16.1(d).*

☐ A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

    ☐ C.R.C.P. 16.1 applies to this case.

    ☐ C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)


Date: <u>September 12, 2016</u>　　　　　　　　　　　　<u>/s/ Jessica Prochaska</u>
                                                                         Signature of Party or Attorney for Party